**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHARLES R. M.,[1]**

        **Plaintiff,**

                        **Civil Action 2:21-cv-4567**
**v.**                     **Judge James L. Graham**
                        **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Charles R. M., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I. BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI in February 2019, alleging that he has been disabled since April 1, 2015, due to glaucoma, blindness in his right eye, lower

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

back pain, diabetes, anxiety, and depression. (R. at 270-282, 310.) Plaintiff's applications were

denied initially in June 2019 and upon reconsideration in September 2019. (R. at 110-182, 184-

214.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 215-217.)

Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on

September 11, 2020. (R. at 51-92.) A Vocational Expert ("VE") also appeared and testified.

(*Id.*) On November 3, 2020, administrative law judge Janet Akers (the "ALJ") issued a decision

finding that Plaintiff has not been under a disability since December 20, 2017. (R. at 22-49.)

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

## II.    HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

> [Plaintiff] alleges disability due to back spasms at night, worsened by the cold. He
> further indicates that pain medications make him drowsy, and persists despite
> having two back surgeries. He further states that he uses a cane in his left (non-
> dominant) hand. He further alleges disability due to neuropathy affecting his feet.
> [Plaintiff] further alleges disability due to vision issues, despite wearing glasses. He
> states he can distinguish between light and dark, but cannot see things against a
> dark floor. He alleges he has no depth perception. He indicates he must strain his
> left eye to read, but can watch television every other day for a couple of hours. He
> indicates he can see and read objects 20 feet or less in front of him. He states that
> he drives during the day, but not at night. He further alleges mental health issues
> due to ongoing stress.

(R. at 32.)

## III.    MEDICAL RECORDS

The ALJ summarized Plaintiff's relevant consultative examination with Dr. Ward as

follows:

> [Plaintiff], at his April 2019 psychological consultative examination, seemed to
> focus on physical ailments as the main reason he was unable to work. While also
> alleging "depressive symptoms," there are no resulting functional limitations cited.

He indicated no outpatient mental health treatment, nor psychiatric admissions. [Plaintiff] also failed to cite mental issues as causing difficulty with activities of daily living, including grocery shopping, preparing meals, doing household chores, or driving at night, which difficulties he cited were due to vision or other physical issues. He further cited no issues (physical or mental) with maintaining grooming and hygiene, managing medications, or watching television. He further indicated maintaining regular contact with family, describing generally positive relationships.

The examiner noted that [Plaintiff] presented as primarily depressed, with flat affect. His facial expression was primarily downcast. However, he did not appear anxious, and maintained consistent eye contact. He was cooperative and rapport was established. He was dressed casually and appropriately, and his grooming and hygiene were noted to be adequate. He was without loose associations, flight of ideas, or delusions.

[Plaintiff] reported receiving special education services during primary schooling, but not during his secondary schooling years. He was never held back in a grade, nor reported behavioral difficulties in school. Still, he reportedly completed specialized vocational training in construction, without noted cognitive difficulties. The examiner deemed [Plaintiff's] intellectual functioning to fall below normal limits, although his performance was also surmised to be impacted by his depressed presentation. During the exam, [Plaintiff] was alert and responsive, although was noted to display limited energy while completing the evaluation process, as he was noted to appear tired. [Plaintiff's] conversational speed was noted to be within normal limits[;] however, his response time was mildly slowed. He was asked to complete a task of attention/ concentration, by counting backward from 100 by 7, which [Plaintiff] was unable to do. He was then asked to count backward from 20 by 3, upon which, [Plaintiff] accurately completed six iterations in 87 seconds. He was able to calculate the value of six quarters, and 24 divided by 3.

The examiner further noted that [Plaintiff's] level of understanding was adequate. He had some difficulty tracking the conversation, as several questions were repeated. His remote recall was adequate, as he provided personal historic information without noticeable difficulty. He recalled four digits forward and three digits backward. He recalled none of three words after a five-minute delay. He was deemed with adequate judgment and insight to be able to make decisions independently. There were no observable deficits affecting [Plaintiff's] ability to manage his own funds. He was diagnosed with borderline intellectual functioning and adjustment disorder, with mixed anxiety and depressed features.

The psychological consultative examiner's findings of some cognitive deficits, particularly in understanding, concentration and focus, are wholly inconsistent with a lack of ongoing complaints of cognitive deficits in the treatment record, as well as primary care physician findings showing minimal mental deficits, without referral to therapy, psychiatry, or other specialist, nor evidence of any

recommended intensive outpatient or inpatient treatment.

(R. at 37-38 (internal citations omitted).)  The ALJ then summarized the relevant medical records

as to Plaintiff's mental health[2] treatment as follows:

> As to mental impairments, treatment is rather conservative, consisting largely of medication prescribed by [Plaintiff's] primary care physician, without specialist referrals, nor recommendations for intensive outpatient or inpatient treatment.
>
> When [Plaintiff] sought to establish care with a primary care physician in September 2018, he alleged symptoms of depression, along with his physical complaints, but denied suicidal or homicidal thoughts.
>
> Despite no ongoing mental health treatment, including psychotropic medication, psychiatric exams showed minimal deficits. Although [Plaintiff] was noted with a depressed and anxious mood, his affect was normal. His speech, behavior, judgment, and thought content were similarly normal. He denied homicidal or suicidal thoughts.
>
> [Plaintiff] had indicated good results in the past with Lexapro, upon which, within a month, October 2018 records document [Plaintiff's] reports that Lexapro was working "great," such that he no longer experienced depressive symptoms or anger, and was sleeping better.
>
> Psychiatric exams were overall normal, including mood, affect, speech, behavior, judgment, and thought content. [Plaintiff] continued to deny homicidal or suicidal thoughts. He described himself as "happy-go-lucky."
>
> In December 2018, [Plaintiff] alleged recently worsened depressive symptoms and insomnia however, such complaints proved to be short-lived. The next month, January 2019 follow-up records note that [Plaintiff] endorsed improved symptoms, while still on Lexapro, and wanting to stay on the same medication, despite additional reports that he had "a lot on his mind," and had abnormal sleep habits.
>
> January 2019 psychiatric exams remained overall normal. [Plaintiff] retained normal mood, without depression and anxiety. Similarly, normal were [Plaintiff's] affect, behavior, speech, judgment, thought content, cognition, and memory. He continued to be without suicidal or homicidal thoughts.
>
> February 2019 and March 2019 primary care physician follow-up records note no depression, as psychiatric exams remain largely unchanged, showing few deficits

---

[2] Because Plaintiff's Statement of Errors, ECF No. 12, pertains only to his mental health issues, the Undersigned's discussion is limited to the same.

from a month prior, as psychiatric exams remain overall normal.

\*\*\*

With mental health treatment and medications continually monitored by
[Plaintiff's] primary care physician, July 2019, October 2019, January 2020, April
2020, and July 2020 psychiatric exams remain overall normal, as such records are
devoid of mental symptoms complaints. In fact, in July 2020, [Plaintiff] stated that
his depression was well-controlled with medication.

(R. at 37-38 (internal citations omitted).)

## IV.    ADMINISTRATIVE DECISION

On November 3, 2020, the ALJ issued her decision.  (R. at 22-49.)  First, the ALJ found

that Plaintiff met the insured status requirements of the Social Security Act through December

31, 2020.  (R. at 27.)  At step one of the sequential evaluation process,[3] the ALJ found that

Plaintiff has not engaged in substantially gainful activity since December 20, 2017, the alleged

onset date.  (R. at 27-28.)  The ALJ found that Plaintiff has the following severe impairments:

pigmentary glaucoma; diabetes mellitus; lumbar degenerative joint disease; neuropathy by

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
      equal the criteria of an impairment set forth in the Commissioner's Listing of
      Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant
      perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual
      functional capacity, can the claimant perform other work available in the national
      economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

history; major depressive disorder; adjustment disorder with mixed anxiety and depressed

features; and borderline intellectual functioning. (R. at 28.) The ALJ further found that Plaintiff

has not had an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 29.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has
> the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs, but never
> ladders, ropes, or scaffolds; avoid workplace hazards such as unprotected heights
> and moving mechanical parts; can tolerate occasional exposure to weather;
> occasionally balance and stoop; frequently kneel, crouch, and crawl; can perform
> work with occasional near acuity but that requires no depth perception; requires
> large font type, size 14+; cannot operate a commercial motor vehicle; can perform
> simple routine tasks; can work at a consistent pace throughout the workday but,
> cannot perform production rate pace work where tasks must be performed quickly;
> requires a cane for prolonged ambulation.

(R. at 31.) At step four of the sequential process, the ALJ determined that Plaintiff is unable to

perform his past relevant work as an equipment cleaner, machine tender or material handler. (R.

at 41-42.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other

jobs that exist in significant numbers in the national economy. (R. at 42-43.) She therefore

concluded that Plaintiff has not been under a disability from December 20, 2017 through the date

of the decision. (R. at 43.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In his Statement of Errors, Plaintiff asserts that the ALJ failed to properly evaluate and account for the opinions provided by consultative psychologist, Christopher Ward, Ph.D. (ECF No. 12 at PAGEID ## 1059-1063). For the reasons discussed below, the Undersigned agrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] imitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id.*  The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both."  20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).  "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

---

[4] Plaintiff's application was filed after March 27, 2017.  (R. at 270-282.)  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

§§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.* If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated

each opinion or finding individually but must instead articulate how he considered the opinions

or findings from that source in a single analysis using the five factors described above.  20

C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).  Finally, the regulations explain that the SSA is not

required to articulate how it considered evidence from non-medical sources.  20 C.F.R. §§

404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate

the "supportability" and "consistency" of medical source opinions and prior administrative

findings:

> (1) Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more persuasive
> the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and nonmedical
> sources in the claim, the more persuasive the medical opinion(s) or prior
> administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2).  In practice, this means that the

"supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection

procedures/analysis, and other objective medical evidence."  *Reusel v. Comm'r of Soc. Sec.*, No.

5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996

SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. §

404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. §

404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and

"consistency" for purposes of the post-March 27, 2017 regulations)).

Against that backdrop, the ALJ provided the following discussion and analysis of Dr.

Ward's opinion:

**The psychological consultative examiner's findings of some cognitive deficits, particularly in understanding, concentration and focus, are wholly inconsistent with a lack of ongoing complaints of cognitive deficits in the treatment record,** as well as primary care physician findings showing minimal mental deficits, without referral to therapy, psychiatry, or other specialist, nor evidence of any recommended intensive outpatient or inpatient treatment.

\*\*\*

The psychological consultative examiner noted some understanding, attention and focus deficits, and indications of depression affecting mood stability and ability to manage pressure, however, **this one-time evaluation of [Plaintiff] is contrary to findings noted in the longitudinal treatment record**.

\*\*\*

**[T]he opinions of the psychological consultative examiner [Dr. Ward], are somewhat persuasive, as they are based on [Plaintiff's] self-reports, in addition to findings resulting from a one-time examination of [Plaintiff], contrary to findings in the longitudinal treatment record.** The psychological consultative examiner opined that [Plaintiff] had difficulty understanding complex and more sophisticated instructions, as well as appeared to have difficulty with attention and focus, although adequately completed tasks during the evaluation. However, [Plaintiff] was opined without significant interaction difficulties. It was further concluded that [Plaintiff] presented with indications of depression, which may impact mood stability and ability to manage competitive work setting pressure. The examiner also opined that [Plaintiff's] intellectual functioning may negatively impact his ability to adequately manage occupational tasks with normal work pressure.

(R. at 38, 40-41 (emphasis added; internal citations omitted).)  Thus, while it is clear to the Undersigned that the ALJ adequately (and repeatedly) discussed the ***consistency*** of Dr. Ward's opinion with "the longitudinal treatment record," it is similarly clear to the Undersigned that the ALJ failed to discuss the ***supportability*** of Dr. Ward's opinion – that is to say, the ALJ did not discuss Dr. Ward's references to "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence."  *Reusel*, 2021 WL 1697919, at \*7 n.6.  Indeed, a reader with no previous knowledge of Plaintiff's claim would have no information regarding how Dr. Ward reached the conclusions which the ALJ found to be only "somewhat persuasive," except for

Plaintiff's "self-reports," as the ALJ did not discuss the critical objective medical evidence underlying Dr. Ward's opinion as required. *Id.* And as Plaintiff correctly points out, the ALJ's failure is not due to Dr. Ward's oversight, as Dr. Ward personally examined and evaluated Plaintiff and discussed his objective findings within his opinion. (ECF No. 12 at PAGEID # 1060 (citing R. at 811-812).) Accordingly, the ALJ had a duty to discuss whether Dr. Ward's analysis of his objective medical findings supported his opinions, but the ALJ failed to do so.

The Commissioner argues that the ALJ "addressed the factor of supportability" by "explaining that Dr. Ward's opinion regarding social interaction was not supported by Dr. Ward's own observations" and that "Dr. Ward's opinion regarding understanding instructions, completing instructions, and maintaining attention and focus were not supported by Dr. Ward's observations," but the Undersigned disagrees. (ECF No. 15 at PAGEID # 1076.) While the ALJ did note Dr. Ward's observations as to Plaintiff's "difficulty understanding complex and more sophisticated instructions" and "difficulty with attention and focus," that was only one element of Dr. Ward's opinion, and the ALJ's responsibility did not end there. (*See* R. at 40-41.)

For example, while the ALJ noted Dr. Ward's opinion that Plaintiff does not have "significant interaction difficulties," the Undersigned disagrees with the Commissioner's contention that the ALJ explained how Dr. Ward's objective observations supported (or did not support) this conclusion. (*Id.*) This is an especially glaring oversight given Dr. Ward's very next opinion, which was that Plaintiff's depression "may impact [Plaintiff's] mood stability and ability to manage competitive work setting pressure." (R. at 40-41.) Beyond that, however, the ALJ also noted that Dr. Ward "opined that [Plaintiff's] intellectual functioning may negatively impact his ability to adequately manage occupational tasks with normal work pressure," but then failed to discuss whether Dr. Ward's objective examination supported (or did not support) this

12

conclusion. (R. at 41.) Without the ALJ properly discussing the extent to which Dr. Ward's examination and observations supported his opinions, the Undersigned cannot follow the ALJ's reasoning. *See Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 7, 2022), *report and recommendation adopted*, No. 2:21-CV-5111, 2022 WL 1211427 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's . . . unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning."); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks and citation omitted).

The Commissioner's opinion that the ALJ was justified in discrediting Dr. Ward's opinion because his objective observations did not support his opinions is just that – the Commissioner's opinion. But the question is not whether the Court can justify alternative conclusions, it is if the ALJ's decision "was made pursuant to proper legal standards.'" *Rabbers*, 582 F.3d at 651. And to this end, the Commissioner does nothing to rebut Plaintiff's argument that under the applicable regulations, the ALJ had a duty to discuss the supportability factor when determining the persuasiveness of Dr. Ward's opinion. Indeed, the relevant regulation reads as follows:

> **The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider** when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, **we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision**. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2) (emphasis added). For the ALJ to have adequately discussed the

13

supportability of Dr. Ward's opinion, the ALJ needed to evaluate what Dr. Ward said he had

based his opinion on – not simply how Dr. Ward's opinion compared to the record evidence as a

whole, which only goes to the consistency of Dr. Ward's opinion.  *See Reusel*, 2021 WL

1697919, at *7 n.6 (discussing that an adequate "supportability" discussion "evaluat[ed] what

[the doctor] said he based his opinion on," while a "consistency" discussion "compared the

opinion to the evidence as a whole").  The ALJ simply did not do so for Dr. Ward's opinions

regarding Plaintiff's interaction difficulties (or lack thereof), his ability to manage a competitive

work setting, or his ability to manage occupational tasks with normal pressure.  (*See* R. at 40-41.)

Given this, it is well settled that the ALJ's failure to discuss the supportability of Dr.

Ward's opinion requires remand, because "without fuller explanation, this court cannot engage in

meaningful review of the ALJ's decision."  *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-

CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*,

No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v.

Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In

the absence of a sufficient explanation of supportability and consistency with the record as a

whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported

by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for

further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. §

404.1520c.").  Accordingly, Plaintiff's assignment of error is well taken, and the judicial inquiry

ends.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is

14

therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

|  |  |
|---|---|
|  | */s/ Elizabeth A. Preston Deavers* |
| **DATED: July 11, 2022** | **ELIZABETH A. PRESTON DEAVERS**<br>**UNITED STATES MAGISTRATE JUDGE** |